```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
                      MIAMI DIVISION
               Case No. 12-20285-CR-SEITZ

UNITED STATES OF AMERICA              MIAMI, FLORIDA

                                      November 5, 2012
     Versus                           VOLUME I

                                      PAGE 1 TO 20
ALBA SERRANO
                    Defendant


                     SENTENCING HEARING
              BEFORE THE HON. PATRICIA A. SEITZ, J.
                 UNITED STATES DISTRICT JUDGE


APPEARANCES:

FOR THE GOVERNMENT:

                        WILLIAM PARENTE, ESQ.
                        Assistant United States Attorney
                        99 N.E. 4th Street
                        Miami, FL  33132

FOR THE DEFENDANT:

                        NATHAN P. DIAMOND, ESQ.
                        888Biscayne Boulevard - Suite 501
                        Miami, FL  33132




REPORTED BY:            DAVID S. EHRLICH, RPR
                        Official Court Reporter
                        Wilkie D. Ferguson, Jr.
                        U. S. Courthouse
                        400 N. Miami, Room 11-4
                        Miami, Florida 33128-1810
                        (305) 523-5537
```

```
 1              (Court convened at 8:30 a.m.)
 2          MS. WEBB:  Case number 12-20285 criminal, United States
 3 verses Alba Serrano.
 4          Counsel, please state your appearances.
 5          MR. PARENTE:  Good morning, Your Honor.  William Parente,
 6 on behalf of the United States.
 7          THE COURT:  Good morning, Mr. Parente.
 8          Mr. Diamond.
 9          MR. DIAMOND:  May it please the Court, Nathan Diamond, on
10 behalf of Alba Serrano, who is standing beside me.
11          THE COURT:  Good morning, Mr. Diamond.
12          Good morning, Miss Serrano.
13          THE DEFENDANT:  Good morning.
14          MR. DIAMOND:  I called your office in an abundance of
15 caution last Friday.  Miss Serrano speaks very well.  The problem is
16 she has been so nervous and her first language was Spanish and then
17 when she gets really nervous when I was going through the PSR and
18 the objections and the motions for mitigation I just thought there
19 are a lot of questions and I had my assistant interpret for me, but
20 I thought it might be best just for court purposes somebody be
21 present, I don't know, on a standby, or how the Court wants to do
22 it.
23          THE COURT:  I anticipate, given the 5K, this will be a very
24 quick procedure.  So if our interpreter -- I am going to try to do
25 it even within 20 minutes.  Would that be okay?  Then I overtax you
```

1  and you are here in case she needs someone?
2          COURT INTERPRETER:  Your Honor, we are at your pleasure.
3  It will be fine.
4          THE COURT:  And on behalf of Probation?
5          PROBATION OFFICER:  Good morning.  Clara Lyons with
6  Probation.
7          THE COURT:  Please have a seat everyone.
8          Do you want to have the earphones, Miss Serrano, near you,
9  or will you -- Oh, you do.
10         MR. DIAMOND:  Miss Serrano will do without for right now
11 and if there is an issue she will let me know, if that is okay with
12 the Court, and I will let the Court know.
13         COURT INTERPRETER:  Your Honor, I will be paying attention
14 to her body language and if she lets me know, I will start
15 interpreting immediately.
16         THE COURT:  You are superb in that regard.
17         You have one of the best interpreters Miss Serrano.
18         MR. DIAMOND:  I agree.  I know her.
19         THE COURT:  The doctor.
20         Miss Serrano, have you had an opportunity then to review
21 the Presentence Investigation Report with Mr. Diamond and the
22 addendum to the report?
23         THE DEFENDANT:  Yes, Your Honor.
24         THE COURT:  And you have, I hope, seen a copy of the
25 Sentencing Memorandum that Mr. Diamond filed and the 5K motion that

1  the government has filed; have you seen that as well?
2          THE DEFENDANT:  Yes, Your Honor.
3          THE COURT:  Okay.
4          I also went over the Presentence Investigation Report.  I
5  only saw one typo that I informed Miss Lyons of this morning.  That
6  is on page 16 paragraph 65.  I think the typo is -- should be
7  "married" instead of "marred."  So, Miss Lyons is going to correct
8  that.
9          Mr. Diamond, did you, or Mr. Parente, did you see any other
10 typos, corrections that we need to make as to the facts?  Just the
11 facts.
12         MR. DIAMOND:  I didn't.  But in an -- I spoke to it in my
13 memorandum in support of sentencing mitigation.  I believe that Miss
14 Lyons may have been referring to a different section of the
15 guidelines that was part of the objections.
16         THE COURT:  That has to do with the objections and the
17 calculations of the guidelines.  Right now what I'm only concerned
18 about are the facts.
19         MR. PARENTE:  Your Honor, I have one point of
20 clarification.  It looks like paragraph 43 on page 13.  The
21 restitution amount is correct, 258,329.45.  I think the language
22 that follows after that may be incorrect in that there may be other
23 defendants that owe that amount jointly and severally.
24         THE COURT:  With Duran.  It should include Valera and
25 Negron; is that what you are saying?

```
 1              MR. PARENTE:  Yes, Your Honor.
 2              THE COURT:  So would you add in, Miss Lyons, Valera and
 3   Negron, who are mentioned in paragraph 39?  And I guess Acevedo as
 4   well, who are all the defendants in the Judge King case?
 5              MR. PARENTE:  That's correct, Your Honor.  And now that I'm
 6   thinking about it also in case number 12-20291, United States versus
 7   Armando Gonzalez, a portion of this amount relates to this case, and
 8   I will get with Probation to identify the defendants who will be
 9   liable for that portion.
10              THE COURT:  Any objection to that, Mr. Diamond?
11              MR. DIAMOND:  No, Your Honor.  And if I can be just very
12   brief in relation to that.  Miss Serrano from the beginning, and
13   we'll get into it a little bit more, but from the beginning has
14   accepted her responsibility and worked with the government in many
15   regards.
16              The 258,329.45 was going to be jointly and severally from
17   all of those people who benefited far more greatly than Miss
18   Serrano.  So I don't really know who those people are but certainly
19   I would have no objection to them shouldering the responsibility for
20   that money.
21              THE COURT:  Tell me the case number you are talking about,
22   Mr. Diamond.
23              MR. DIAMOND:  I'm sorry?
24              THE COURT:  The case number that you just used.
25              MR. DIAMOND:  No, I don't have any case number.  In our
```

```
 1  case number what we did was we agreed from the beginning.  We have
 2  been involved in this process for more than a year in spite of the
 3  fact that the Information was only filed in May.  So the more people
 4  that shoulder their responsibility certainly we would agree to.
 5          THE COURT:  Okay.
 6          So, Mr. Parente, if you will work with Probation and Miss
 7  Webb, because I will need to know that for the Judgment and
 8  Conviction.  I need to know who will be listed as jointly
 9  responsible.
10          MR. PARENTE:  Yes, Your Honor.  I will meet with Miss Lyons
11  after the proceedings.
12          THE COURT:  So is there any other correction?  Because I
13  really rely on you all since you know the details of this case much
14  better than I since I have not sat through a trial involving this
15  defendant.
16          MR. PARENTE:  None from the government, Your Honor.
17          THE COURT:  Okay.
18          And I presume that you are of accord with that, Mr.
19  Diamond?
20          MR. DIAMOND:  Yes, Your Honor.
21          THE COURT:  I have read the government's 5K motion and the
22  defendant's Sentencing Memorandum, and let me tell you where I am at
23  the bottom line.
24          Based upon the facts in this particular case, and I'm
25  looking at page 14, I agree with the parties that paragraph 49, that
```

1  two-level enhancement should not be applied in this case because it
2  appears that Miss Serrano's patients, or clients, did not fit into
3  the vulnerable victim that I have seen in the trial that is in front
4  of me, either in the original trial or this trial, it was clear in
5  looking at the particular patients that went through ATC that do not
6  appear to be associated with Miss Serrano, it was appropriate to
7  apply the vulnerable victims enhancement.
8          I particularly noticed that the distinction here is that
9  Miss Serrano's patients really saw this as an opportunity to take a
10 trip someplace and so they did not fit into the totally
11 incapacitated patients that have come out in the evidence in the
12 other cases.
13         As to the two-level enhancement for sophisticated means,
14 given that this is applied to the overall conspiracy I'm going to
15 overrule the objections and apply that two-level enhancement.  That
16 would provide a total offense level of a 19, which would provide a
17 guideline range of 30 to 37 months.  I plan on granting the
18 government's motion for the 5K so that the parties actually end up
19 with the 16-month sentence.
20         I know that Mr. Diamond is advocating for a lower sentence
21 than the 16 months, but when I accurately calculate the guideline
22 range, that puts Miss Serrano at almost a 50 percent off.  I think
23 it is 45 percent off, which is more than what the government is
24 recommending.
25         I appreciate very much that Miss Serrano has cooperated

1  with the government from the get-go and cooperated so closely that
2  the government sought -- and I think that this is probably due to
3  the fact that she had the excellent representation of Mr. Diamond
4  who was helping guide her through -- that the government proceeded
5  against Miss Serrano with simply an Information rather than coming
6  down with an Indictment.  It reflects Miss Serrano's desire to
7  cooperate and to try and rectify the choices that she made in
8  putting money before abiding by the law which she was very familiar
9  with given the courses that she had to take as being an adult
10 assisted living home operator.  And I was concerned with the amount
11 of time over which she engaged in this.  So that is sort of where I
12 come out to a 16-month sentence.
13         Now you sort of know where I am, but I am ready, willing
14 and able to give you some time to say anything you would like to
15 change my mind.
16         And, Miss Serrano, you have the right to speak.  You can
17 speak, you can have Mr. Diamond speak, you can have both speak, you
18 can have anyone else speak on your behalf.
19         THE DEFENDANT:  Yes, I want to speak.
20         THE COURT:  Okay.  What would you like to do?
21         THE DEFENDANT:  Your Honor --
22         THE COURT:  You can have a seat.  Just go ahead and have a
23 seat and just pull the microphone down.
24         THE DEFENDANT:  Your Honor, I have 41 years conducted
25 myself the best.  It is true, I make this decision to take the

1  money.  I'm sorry.  I'm sorry.  I know I made such a wrong turn.
2  But I pray to God everyday.  I do my best and never will do it
3  again, ever wrong.  I'm sorry.
4           THE COURT:  I accept your apology, Miss Serrano.
5           THE DEFENDANT:  I'm sorry.  Praise to God.
6           THE COURT:  How did your son get involved in this as well?
7  When he was indicted, how come you didn't get out of it?
8           THE DEFENDANT:  We used to live together.  Left when he was
9  19 years old living alone.
10          MR. DIAMOND:  If I may, his conduct was clearly independent
11 of a different nature.
12          THE COURT:  Oh, it was?
13          MR. DIAMOND:  Absolutely, as I understood it.  I did not
14 represent him.  But they weren't living together.  Yes, she knew he
15 had an issue, he had a problem.
16          THE COURT:  What was his issue?  It was Medicare fraud?
17          MR. PARENTE:  It was, Your Honor.  I handled that
18 Indictment of Marcello de Jesus Serrano about five years ago.  That
19 was an elaborate scheme which at that time I think we were actually
20 charging for the actual loss amount which was somewhere between 2
21 and 5 million.  I think the amount of submitted claims were much
22 higher than that.  But he was adequately represented by counsel at
23 the time.
24          He also cooperated with the government, and I think he just
25 came off his Probation at the beginning of the month.

1          THE COURT:  You mean supervised release.

2          MR. PARENTE:  Supervised release, yes, Your Honor.

3          THE COURT:  I saw that the bottom of the guideline range
4  was 57 months, but he served only two years.  So I had some inkling
5  that there was a 5K or Rule 35.

6          MR. PARENTE:  There was a Rule 35, which I filed, Your
7  Honor.

8          I will also note the government recovered in excess of 1.3
9  million in liquid assets in that case that we seized from an e-trade
10 account he held here in the United States.  But as Mr. Diamond
11 stated, it was unrelated to the current criminal conduct which his
12 mother is charged.

13         MR. DIAMOND:  The other thing I think, if that is a
14 consideration, and I'm going to do something Alba did not want me to
15 get into, but she had from time to time had been the victim of abuse
16 from the son.

17         THE COURT:  I just -- you have cleared up -- I was
18 concerned he was involved in her ALF.

19         MR. DIAMOND:  No, he was not.

20         That being said, and again I know I have advocated at least
21 my feelings on behalf of others, and perhaps this Court has already
22 heard my position on it, and I just simply go back to the
23 over-emphasis of the guidelines and the factors that Courts
24 consider, particularly when I'm dealing with an Alba Serrano.

25         I've gotten to know Alba now for about 18 months.  When she

 1  came to me she was beside herself in terms of what it was.  But what
 2  I really mean to say is, and I had an agreement with the government
 3  in terms of the amount of loss, that is that we have agreed to that
 4  and that it would be paid in part by her, or to the extent that she
 5  is jointly and severally liable.
 6          But when we placed the emphasis on numbers like we do in
 7  these courts, and that's really the difficulty I have, and I guess
 8  that is why I sit here and don't sit where Your Honor is, but there
 9  is this emphasis on numbers, numbers that are put into Sentencing
10  Guidelines, numbers that say if the loss is X number of dollars it
11  should be whatever it is.  And that's why --
12          Alba made $48,000, of which it has cost her so much more in
13  terms of psychological in terms of every part of her life.  The
14  remorse that I saw from the beginning was tremendous.  She is what,
15  four-foot eight?  She goes and puts on a wire to meet with these
16  fellows that she considers rather dangerous.  She recorded them on
17  at least, I believe -- I'm not sure that my numbers are correct, but
18  Mr. Parente can better speak to that -- about 14 times, both video
19  and audio, in meetings where she was alone with these people, in
20  meetings where they brought along I will call them thugs, people who
21  were there for a reason and one reason alone, and that is to
22  intimidate, and they explain to her how they feel about people who
23  cooperate against them.  So it is that kind of thing.
24          And then when we consider Title 18 3553, and we consider
25  the alternatives available to Courts, particularly in cases like

1  this, I urged what I did to this Court in my Sentencing Memorandum,
2  and that is a house arrest situation where she can -- she is not --
3  I don't know if she is finished or not, that is the government's
4  position, but she is certainly there for them, anything they need,
5  and will continue to do so.
6            But I know this Court hears it all the time, but I don't
7  think there is any question, any question in anyone's mind, Alba
8  Serrano will never find herself in a courtroom again; not for
9  anything like this.
10           THE COURT:  I trust that, Mr. Diamond.  And the difficulty
11 we have, and the reason why it is numbers driven, is because it is
12 the money that gets people involved.  And white-collar crime has a
13 corrupting influence on the community and on a broader scale impacts
14 more people.  White-collar criminals think of themselves as
15 sometimes just focused on the money, everybody is doing it, I can
16 get away with it, and it is not the sense of I'm not holding a gun
17 to somebody's head and robbing them; it is a "clean crime."  But it
18 is so pervasive and so undermines the community confidence here.
19 And, you know, you start down on a slippery slope of just
20 trafficking in human beings because if we really want to be blunt,
21 that is what this is.  I have bodies.  You want to bill, I will help
22 facilitate your criminal enterprise and I will just take my money
23 and look the other way.
24           But if she is not trafficking in her patients, even though
25 her patients in this particular case saw this as a way of getting

1  out of the house as opposed to some other folks so that the patients
2  were somewhat complicit in it, it's just we can't have this happen.
3          MR. DIAMOND:  And I agree with the Court.  The problem that
4  I have is, again, it's not the owners of ATC.  It's not the owners
5  of the other facilities who are the ones who are paying out those
6  monies.
7          THE COURT:  And they got 50 years and 35 years.
8          MR. DIAMOND:  And I appreciate that.  But again, when we
9  start looking at these nuances of dollar amounts in 2B1, which we
10 are faced with here, that's where the difficulty lies.  And that's
11 why I urged the Court to consider the sentence that I have urged.
12         THE COURT:  So basically what you want me to look at is how
13 much she actually recovered out of this.
14         MR. DIAMOND:  And the suffering that she has -- She
15 understands.  There is no question.  Again --
16         THE COURT:  You know, the suffering comes from the choices
17 that she made.
18         MR. DIAMOND:  No question.  No question at all.  Thank you,
19 Your Honor.
20         THE COURT:  Miss Serrano, you have the right to say
21 anything in addition to what you have already said, if you want to.
22 You don't have to.  Mr. Diamond has probably persuaded me to go at
23 least down to 15 months.  And I think that that is -- that makes it
24 a 50 percent off with the 5K.
25         MR. PARENTE:  Okay.  Your Honor, just briefly --

1         THE COURT:  I know you are not happy with that either, Mr.
2    Parente.
3         MR. PARENTE:  Your Honor, I think your initial conclusion
4    was a fair conclusion of 16 months.
5         Just one issue on loss.  The focus that Mr. Diamond is
6    looking at is the 45 or $50,000 she received in kickbacks.  What was
7    charged in this case was the intended loss which is her funneling
8    the patients through two networks ATC and Solutions Network and the
9    amounts they billed the Medicare program, which was somewhere around
10   $600,000.  That is the amount of money that is in play here.  She
11   caused that to be billed by sending those patients to those
12   facilities.  And Your Honor is well-aware of the damage that the ATC
13   case has caused the Medicare system, the types of people that were
14   involved in that, and although this defendant had a small role in
15   that she nonetheless had a role.
16        Just going back briefly, regarding cooperation, I want Your
17   Honor to be fully aware of the facts.  In fact, this defendant did
18   20 consensual telephone conversations and had seven in-person
19   meetings with targets, and as a result of those meetings and
20   recordings two separate FBI investigations were initiated based on
21   her cooperation.  So the government recommended a third.
22        If Your Honor wants to go an additional reduction beyond
23   that, that is within your discretion, Your Honor.  But I think the
24   16 months that you previously recommended is fair.
25        THE COURT:  Okay.

1           There were 20 consensual --

2           MR. PARENTE:  Yes, Your Honor.  There are 20 consensual
3  phone recordings against two separate targets.

4           THE COURT:  And how many in-person meetings?

5           MR. PARENTE:  There were seven, Your Honor.

6           THE COURT:  Okay.

7           Well, thank you very much, Mr. Parente, because that gives
8  me even more confidence that the 15 months and the 50 percent is the
9  appropriate sentence.  I mean, that is quite extensive cooperation.
10 And considering the fact that she was willing to come forward from
11 the get-go, I feel very comfortable that that is the appropriate
12 sentence in this case.

13          Just so that the parties recognize, I am finding that the
14 total offense level is a level 19 with a Criminal History Category
15 of I, which provides a guideline range of 30 to 37 months.

16          The Court also finds that the defendant -- having reviewed
17 the Presentence Investigation Report, the defendant is not able to
18 pay a fine in addition to the mandatory restitution.  Therefore, I
19 shall not impose a fine.

20          The Court has considered the statements of all of the
21 parties, the acceptance of responsibility by Miss Serrano, the
22 Presentence Report which contains the advisory guidelines and the
23 statutory factors.

24          Given the government's 5K, the Court -- and a description
25 of what she has done in this particular case, and also looking at

1  the 3553(a) factors, the Court believes a sentence of 15 months is a
2  reasonable sentence.
3          The Court recognizes this is a very serious crime.  The
4  Court has also looked at the fact that Miss Serrano was engaged in
5  it for a number of years.  The Court has taken into consideration
6  the impact on the Medicare system that her actions facilitated.  The
7  Court has also recognized the amount of money that she personally
8  benefited from this.
9          The Court has also taken into consideration that she has
10 been in this healthcare business for a number of years and that both
11 plays both for her and against her in the sense that she has had
12 quite a number of years of doing this, and apparently without any
13 problems.  But it also shows that of all the people, Miss Serrano,
14 you should not have done this.
15         THE DEFENDANT:  I'm sorry.
16         THE COURT:  I accept your apology on behalf of --
17         THE DEFENDANT:  I'm sorry.  I never did anything wrong
18 before.
19         THE COURT:  And I understand that.
20         But to avoid disparity in sentencings and to accomplish the
21 purposes of sentencing as set forth in 3553(a), it is the Judgment
22 of the Court that the defendant Alba Serrano is committed to the
23 Bureau of Prisons to be imprisoned for 15 months.
24         It is further ordered the defendant shall pay restitution
25 in the amount of $258,329.45.  This restitution is owed jointly and

severally with Larry Duran, Marianella Valera, Judith Negron and Miss Acevedo in docket number 10-CR-20767-JLK, and Joseph Valdez in docket number 11-CR-20100-PAS.

During the period of incarceration payment shall be made as follows:  If the defendant earns wages in a Federal Prison Industries Unicorps job, then the defendant must pay 50 percent of the wages earned towards the financial obligations imposed by this Judgment in a criminal case.

If the defendant does not work in a Unicorps job, then the defendant must pay a minimum of $25 per quarter toward the financial obligations imposed in this order.

Upon release from incarceration, the defendant shall pay restitution at the rate of 10 percent of monthly gross earnings until such time as the Court may alter the payment schedule in the interests of justice.

The U.S. Bureau of Prisons, the U. S. Probation Office, and the U. S. Attorney's Office, shall monitor the payment of the restitution and report to the Court any material change in the defendant's ability to pay.  These payments do not preclude the government from using any other anticipated or unexpected financial gains, assets or income of the defendant to satisfy the restitution obligations.

The restitution will be made payable to the Clerk, United States Court, and forwarded to the U.S. Clerk's Office, attention financial section, 400 North Miami Avenue, Room 8N09, Miami,

```
 1  Florida, 33128.
 2          The restitution shall be forwarded by the Clerk of the
 3  Court to the victim on the attached list, which is Medicare, Center
 4  for Medicare and Medicaid Services.
 5          Upon release from imprisonment, the defendant will be
 6  placed on supervised release for the term of three years.
 7          Within 72 hours of release, the defendant shall report in
 8  person to the Probation Office in the district in which you are
 9  released.
10          While on supervised release you shall not commit any
11  crimes, you are prohibited from possessing a firearm or other
12  dangerous device, you shall not possess a controlled substance, you
13  shall cooperate in the collection of DNA, and shall comply with the
14  standard conditions of supervised release, including the following
15  special conditions as noted in Part G of the Presentence Report,
16  which includes the financial disclosure requirement, the no new debt
17  restriction, the self-employment restriction, and the healthcare
18  business restriction.
19          Finally, the defendant shall immediately pay to the United
20  States a special assessment of $100.
21          The total sentence then is 15 months of imprisonment,
22  restitution in the amount of $258,329.45, three years of supervised
23  release, the $100 special assessment.
24          I believe that there was a forfeiture provision.  Is that
25  taken care of?
```

1          MR. PARENTE:  It is, Your Honor.  The government waives any
2    forfeitures in this case.
3          THE COURT:  Okay.
4          Now that sentence has been imposed, does the defendant --
5    Miss Serrano, do you or your counsel object to the Court's findings
6    of fact or the manner in which the sentence was pronounced?
7          MR. DIAMOND:  Only as stated in the papers.
8          The only other thing I would ask is that Mr. Parente has no
9    objection to self-surrender, and I ask it be done after the first of
10   the year, if that is okay.
11         THE COURT:  I will be happy to do that.
12         Miss Serrano, since I saw you waived your right to appeal
13   the sentence that I impose I don't believe you have the right to
14   appeal since I did not upward depart nor did I impose a sentence
15   greater than the law allows.  But I'm no longer in the business of
16   giving legal advice, so if you disagree with that interpretation any
17   notice of appeal must be filed within 14 days after the entry of the
18   Judgment.  Miss Webb will prepare the Judgment today.
19         If you are unable to pay the costs of the appeal you may
20   apply for leave to appeal in forma pauperis.
21         And I will be happy to have the surrender --
22         What is the day after the holidays, Miss Webb?
23         MS. WEBB:  The first Monday after the holidays would be
24   January 7.
25         THE COURT:  Okay.

1     MR. DIAMOND:  And the other thing I would ask is for a
2 recommendation to a facility close to South Florida, her home.
3     THE COURT:  I will be glad to do that.
4     MR. DIAMOND:  Thank you.
5     THE COURT:  So we'll make it January 7 at 2 p.m. at the --
6 that's the Monday after the first of the year.
7     Miss Serrano, you did the right thing coming forward and
8 making amends.  And I anticipate that this will be the first day of
9 the rest of your life in which you will do again the things that
10 make you a positive member of this community.
11     THE DEFENDANT:  I did this because I wanted to make it
12 better in my life.  And I'm sorry.  I will never do nothing against
13 nobody.
14     THE COURT:  This is the first day the rest of your life.
15 The rest was an education in your past.  And may you have every
16 grace that the good Lord can provide you so that you stay on the
17 straight and narrow.  God bless you.
18     THE DEFENDANT:  Thank you very much.
19     THE COURT:  You are welcome.
20     MR. DIAMOND:  Thank you, Your Honor.
21     MR. PARENTE:  Thank you, Your Honor.
22     (This matter concluded at 9:04 a.m.)
23              **CERTIFICATION**
24 I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD
   OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
25 November 4, 2014                S/DAVID S. EHRLICH
                                   Official Court Reporter

DAVID S. EHRLICH - OFFICIAL COURT REPORTER